851 So.2d 618 (2002)
Ex parte Andy Dwight PIERCE.
(In re Andy Dwight Pierce v. State of Alabama).
1981270.
Supreme Court of Alabama.
September 20, 2002.
Rehearing Denied November 22, 2002.
*619 Ellen L. Wiesner of Cannon & Dunphy, S.C., Brookfield, Wisconsin (brief on remand from denial of postconviction relief filed by LaJuana Davis, Equal Justice Initiative of Alabama, Montgomery), for petitioner.
William H. Pryor, Jr., atty. gen.; and George A. Martin, Jr., and Beth Jackson Hughes, asst. attys. gen., for respondent.
Thomas W. Sorrells, Montgomery, for amicus curiae Alabama District Attorneys Association.

On Return from Remand
HOUSTON, Justice.
The facts of this case were summarized in our previous opinion as follows:
"On January 26, 1989, Andy Dwight Pierce was convicted of murder committed during the course of a robbery, and he was sentenced to death by electrocution. His conviction was affirmed on appeal, but the Court of Criminal Appeals remanded the case for resentencing because improper information had been admitted during the sentencing phase of the trial. Pierce v. State, 576 So.2d 236 (Ala.Crim.App.1990). Pierce was resentenced to death, on April 15, 1991. On return to the remand, the Court of Criminal Appeals ordered a hearing to determine whether the prosecution could provide race-neutral reasons for its use of peremptory strikes to exclude blacks from the jury venire. Pierce v. State, 586 So.2d 1005 (Ala. Crim.App.1991). On return to the second remand, the Court of Criminal Appeals held that the prosecution had offered race-neutral reasons for its strikes and that the trial court had properly resentenced Pierce to death. Pierce v. State, 612 So.2d 514 (Ala.Crim.App. 1992). This Court affirmed the conviction and the resentencing, Ex parte Pierce, 612 So.2d 516 (Ala.1992), and the United States Supreme Court denied certiorari review, Pierce v. Alabama, 510 U.S. 872, 114 S.Ct. 201, 126 L.Ed.2d 158 (1993). The Court of Criminal Appeals issued a certificate of judgment on February 3, 1993.

*620 "On December 2, 1994, Pierce filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. The trial court dismissed several claims, finding that they were procedurally barred by Rule 32.2(a)(2), (3), (4), and (5), Ala. R.Crim. P. After conducting an evidentiary hearing, the trial court entered an order denying Pierce relief on all of his remaining claims. The Court of Criminal Appeals affirmed. Pierce v. State, 851 So.2d 558 (Ala.Crim.App.1999).
"This Court granted Pierce's petition for certiorari review, to examine one of Pierce's four claimsthat Sheriff Douglas Whittle had been a key witness for the prosecution and that he had improperly had close and continual contact with the jury throughout the trial. The Court of Criminal Appeals held that this issue was procedurally barred by Rule 32.2(a)(3) and (5) because it was not raised at trial or on direct appeal, and it further held the claim to be without merit. We reverse and remand."
Ex parte Pierce, 851 So.2d 606, 607-08 (Ala.2000). In Pierce, we concluded that "Sheriff Whittle was in fact a key witness for the State," 851 So.2d at 610, and found "undisputed evidence indicating [Sheriff Whittle] had close and continual contact with the jury," 851 So.2d at 608, in violation of Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). We also held that Pierce's Turner claim, which properly fits under Rule 32.1(a), Ala. R.Crim. P.,[1] would be procedurally barred by Rules 32.2(a)(3) and (5)[2] if "Pierce's attorney did know or should have known of the sheriff's contact with the jury during the trial," 851 So.2d at 616, and we remanded the case for the Court of Criminal Appeals to remand to the trial court for an evidentiary hearing on that issue. In remanding, we noted that we were not foreclosing the viability of Pierce's alternative claim of ineffective assistance of counsel. Id. at 617.
On remand, the trial court found that Pierce's attorney knew or should have known of the sheriff's contact with the jury during the trial. While this finding may result in the preclusion of Pierce's underlying Turner claim, it effectively breathes life into his ineffective-assistance-of-counsel claim, which requires proof (1) that Pierce's attorney did not provide reasonably effective assistance and (2) that Pierce's attorney's deficient performance prejudiced Pierce. Ex parte Land, 775 So.2d 847, 850 (Ala.2000) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
We answered the question of prejudice in Pierce when we held that a Turner violation occurred. In so holding, we quoted Turner, 379 U.S. at 473, 85 S.Ct. 546, which noted that "`it would be blinking reality not to recognize the extreme prejudice *621 inherent in [the] continual association throughout the trial between the jurors and ... key witnesses for the prosecution.' "851 So.2d at 605. We also find that the failure to raise this constitutional violation constitutes a failure to provide reasonably effective assistance. Therefore, based upon the trial court's findings and our previous conclusions in Pierce, we hold that Pierce is entitled to a new trial based upon his ineffective-assistance-of-counsel claim.
For the foregoing reasons, we reverse the judgment of the Court of Criminal Appeals and remand the case to the Court of Criminal Appeals for that court to remand it for a new trial.
REVERSED AND REMANDED.
LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
STUART, J., concurs specially.
MOORE, C.J., and SEE, J., dissent.
BROWN, J.,[*] recuses herself.
STUART, Justice (concurring specially).
I have thoroughly reviewed this case, and while I am reluctant to reverse a conviction and a sentence for such a ruthless offense where nothing before me establishes Pierce's innocence, I recognize that constitutional guarantees must prevail. Pierce was denied effective assistance of counsel; therefore, his conviction and sentence must be reversed.
In his Rule 32, Ala.R.Crim.P., petition, Pierce presents the following claims that concern this Court:
1. "Juror misconduct prior to and during the trial deprived Mr. Pierce of his rights to a fair trial, due process, and a reliable sentencing determination."
2. "Trial counsel failed to object to witnesses for the state having ex parte contact with the jurors. His ineffectiveness violated Mr. Pierce's fundamental rights to due process and a fair trial before an impartial jury. Mr. Pierce was prejudiced by counsel's ineffectiveness because the jurors were likely to base their determinations of credibility upon these ex parte contacts rather than upon the witnesses' demeanor and testimony at trial. The jurors were thus incapable of making a fair, unbiased determination of Mr. Pierce's guilt or innocence."
3. "Counsel was likewise ineffective on appeal to the Alabama Court of Criminal Appeals and the Alabama Supreme Court. He failed to raise issues related to violations of Mr. Pierce's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments and Alabama State law."

I.
As the majority concludes, Pierce's constitutional "juror-misconduct" claim with regard to the alleged improper contact between Sheriff Whittle and the jurors is procedurally barred by Rule 32.2(a)(3) or (5), Ala.R.Crim.P., because the claim could have been raised and addressed at trial and/or on appeal but was not. The circuit court on remand from this Court, Ex parte Pierce, 851 So.2d 606 (Ala.2000), concluded that this claim could have been raised by counsel and addressed at trial and on appeal. The circuit court made these specific findings:
"It was obvious throughout the five-day trial that Sheriff Whittle would have *622 contact with the jurors. It is further well known that any time a jury is sequestered in Geneva County that the Sheriff and employees of the Sheriff's Department see to the juror's needs such as transportation to and from the courthouse, to the motel and transportation to different restaurants.
"Geneva County is a small county with a small rural sheriff's office. When a jury is sequestered it takes nearly the entire department throughout the week to assist in sequestering the jury.
"Also, on several instances throughout the trial, at breaks and adjournment, the jurors were instructed on their duties and responsibilities and obligations while sequestered and that they would be assisted by the Sheriff and the Sheriff's Department."
Additionally, the circuit court noted specific instances in the record where the trial court in open court indicated that Sheriff Whittle would have contact with the jurors. While the extent of Sheriff Whittle's contact with the jury may not have been apparent from those statements, the statements in and of themselves provided Pierce and his counsel with notice that Sheriff Whittle would have contact with the jurors.
In Harris v. State, 233 Ala. 196, 198, 172 So. 347, 348 (1936), this Court stated:
"Ordinarily, the sheriff and his deputy are the proper officers to have charge of a jury during their deliberations, and that includes the rendering of such services to them as their physical condition needs....
"If defendant thinks that they are disqualified for this or other cause, he should ask the court to have another substituted for them."
See also § 12-16-10, Ala.Code 1975 (requiring the sheriff to make arrangements for a sequestered jury). The circuit court's findings are supported by the record on remand, the record of the Rule 32 evidentiary hearing, and the record on direct appeal. Therefore, the circuit court did not err in holding that this constitutional claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on appeal. Rule 32.2(a)(3) and (5), Ala.R.Crim.P.

II.
Pierce's contention that his trial counsel was ineffective for failing to bring to the trial court's attention the alleged juror misconduct, however, is not procedurally barred.
To establish a claim of ineffective assistance of counsel Pierce must establish that his counsel's performance was deficient and that "but for" counsel's actions the outcome of his trial would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
As the majority notes, this Court, in Ex parte Pierce, 851 So.2d 606, evaluated the evidence and conducted a thorough analysis, applying Turner to the facts in Pierce. This Court concluded that a Turner violation had occurred because Sheriff Whittle had had close and continual contact with the jury and because "Sheriff Whittle was in fact a key witness for the State." 851 So.2d at 610.
Additionally, applying the standard intimated in Turner that the contact might have unlawfully influenced the jury, this Court held that the violation was prejudicial.[3] Because we concluded that a Turner *623 violation did occur and that the violation was prejudicial to Pierce's case and because the circuit court concluded that Pierce's counsel knew or should have known of the alleged misconduct, Pierce's counsel's performance was deficient for failing to present this issue to the trial court. Moreover, in light of Sheriff Whittle's continuous contact with the jury,[4] especially his statements informing the jury that members of Pierce's family had threatened the jurors, Pierce established that he was prejudiced by counsel's performance. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Pierce has met this burden and has established his right to a new trial.
MOORE, Chief Justice (dissenting).
I must respectfully dissent from the main opinion. This Court erred in several ways when it issued its September 1, 2000, opinion in this case. First, I do not believe the sheriff was a key witness in this case. Second, even if the sheriff was a key witness, I do not consider him to have had close and continual contact with the jury. Third, Rule 32.1(e) requires that a claim of newly discovered evidence, from which the constitutional violation in this case arises, must meet certain strict conditions. In its September 1, 2000, opinion, this Court eliminated those conditions, e.g., the requirement in Rule 32.1(e) that the petitioner show he is innocent of the crime of which he was convicted.
We remanded this case for the Court of Criminal Appeals to remand it to the trial court for an evidentiary hearing on the question whether Pierce's claim could have been raised at trial or on appeal and whether it was thus barred by Rule 32.2(a)(3) or (5). Specifically, we were concerned with whether Pierce's trial counsel in fact knew or should have known of the extent of the sheriff's contact with the jurors during the trial. Ex parte Pierce, 851 So.2d 606, 616 (Ala.2000).
There were several reasons why this Court considered it important to remand the case for a new hearing. This Court had determined that the sheriff was a "key witness" and that the sheriff had had "close and continual association" with the jury during the trial. Furthermore, the Court carved out an exception to the requirements of Rule 32, Ala.R.Crim.P., for cases involving constitutional claims. I do not agree that the sheriff was a "key witness," nor do I agree that he had "close and continual association" with the jury. Also, I consider that exception it made to Rule 32 to be in error. When this Court adopts a rule, we should follow it and not allow such exceptions. Pierce had an opportunity to appeal his conviction and sentence by alleging legal errors in the case. He was under no obligation in that appeal to show that he was innocent of the crime. However, once he sought review by another method, that is, by way of Rule 32, he came under the stricter requirements of that rule for such a petition to be successful. He could not meet the requirement of Rule 32.1(e). Therefore, I would affirm the judgment of the trial court as to *624 Pierce's guilt and sentence, and I would also affirm the denial of his Rule 32 petition.
This Court's September 1, 2000, opinion summarizes the proceedings as follows:
"On January 26, 1989, Andy Dwight Pierce was convicted of murder committed during the course of a robbery, and he was sentenced to death by electrocution. His conviction was affirmed on appeal, but the Court of Criminal Appeals remanded the case for resentencing because improper information had been admitted during the sentencing phase of the trial. Pierce v. State, 576 So.2d 236 (Ala.Crim.App.1990). Pierce was resentenced to death, on April 15, 1991. On return to the remand, the Court of Criminal Appeals ordered a hearing to determine whether the prosecution could provide race-neutral reasons for its use of peremptory strikes to exclude blacks from the jury venire. Pierce v. State, 586 So.2d 1005 (Ala. Crim.App.1991). On return to the second remand, the Court of Criminal Appeals held that the prosecution had offered race-neutral reasons for its strikes and that the trial court had properly resentenced Pierce to death. Pierce v. State, 612 So.2d 514 (Ala.Crim.App. 1992). This Court affirmed the conviction and the resentencing, Ex parte Pierce, 612 So.2d 516 (Ala.1992), and the United States Supreme Court denied certiorari review, Pierce v. Alabama, 510 U.S. 872, 114 S.Ct. 201, 126 L.Ed.2d 158 (1993). The Court of Criminal Appeals issued a certificate of judgment on February 3, 1993.
"On December 2, 1994, Pierce filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. The trial court dismissed several claims, finding that they were procedurally barred by Rule 32.2(a)(2), (3), (4), and (5), Ala. R.Crim. P. After conducting an evidentiary hearing, the trial court entered an order denying Pierce relief on all of his remaining claims. The Court of Criminal Appeals affirmed. Pierce v. State, 851 So.2d 558 (Ala.Crim.App.1999).
"This Court granted Pierce's petition for certiorari review, to examine one of Pierce's four claimsthat Sheriff Douglas Whittle had been a key witness for the prosecution and that he had close and continual contact with the jury throughout the trial. The Court of Criminal Appeals held that this issue was procedurally barred by Rule 32.2(a)(3) and (5) because it was not raised at trial or on direct appeal, and it further held the claim to be without merit."
851 So.2d at 607-08.
In its opinion of September 1, 2000, this Court reversed the judgment of the Court of Criminal Appeals and stated that Sheriff Whittle was a key witness; that he had had close and continual contact with the jury during the trial; that, according to the United States Supreme Court's opinion in Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), such contact was prima facie prejudicial to Pierce; and that an exception to the claim-preclusion mechanism of Rule 32, Ala.R. Crim.P., operated upon Pierce's constitutional claim to allow his Rule 32 petition to be heard.
I agree with the Court of Criminal Appeals, whose opinion of March 2, 1999, Pierce v. State, 851 So.2d 558 (Ala.Crim. App.1999), contained the following sound reasoning:
"At the outset, we hold that [Pierce] has not satisfied his burden of proving that the alleged improper contacts between Whittle and the jury constitute newly discovered evidence. Therefore, *625 the circuit court correctly found that [Pierce's] claim concerning Whittle's alleged improper contact with jurors was procedurally barred because [Pierce] could have raised it at trial or on appeal but did not. Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
"With regard to newly discovered evidence, Rule 32.1(e), Ala. R.Crim. P., provides:
"`(e)Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
"`(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
"`(2) The facts are not merely cumulative to other facts that were known;
"`(3) The facts do not merely amount to impeachment evidence;
"`(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
"`(5) The facts establish that petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that petitioner received.'
"When filing a petition for post-conviction relief, `[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.' Rule 32.3, Ala. R.Crim. P. [Pierce] has not satisfied his burden of proving that his allegations qualify as newly discovered evidence."
851 So.2d at 565.
In addition to the analysis of the question by the Court of Criminal Appeals, we have the trial court's order after remand. The trial court held a hearing on these questions and determined that Pierce's trial counsel should have known of the sheriff's contact with the jurors for the following reasons:
1) It is well-known in Geneva County that when a jury is sequestered, the sheriff and other employees of the sheriff's department see to the jurors' transportation needs;
2) Geneva County is a small county, and the sheriff's office is also small, requiring nearly the entire sheriff's office to assist a jury that has been sequestered;
3) At several times during the trial, the jury was instructed that it would be assisted by the sheriff;
4) The instructions even stated that the sheriff would explain the arrangements to the jury; and
5) It was plain that the sheriff had contact with the jury in the courtroom during trial.
Therefore, I agree with the Court of Criminal Appeals in its affirmance of the trial court on this issue because Pierce did not satisfy the requirements of Rule 32.2(a)(3 and (5), Ala. R.Crim. P. Because Pierce could have raised this issue during trial, at sentencing, or on appeal, he must be denied relief. See Rule 32.2, Ala. R.Crim. P. Also, Pierce has not shown how the result of his trial could have been different even if he had raised an objection to Sheriff Whittle's contact with the jury before the trial court. Rule 32.1(e)(4), Ala. R.Crim. P. Nor has he shown, as required by Rule 32.1(e)(5), Ala. R.Crim. P., that the facts show that he was innocent of the *626 crime with which he was charged or that he should have received a different sentence. Therefore, the trial court properly denied his Rule 32 petition on this issue. Pierce failed to satisfy Rule 32.1(e), and any one of the three reasons listed above would have prevented his petition from being considered as one that raised newly discovered evidence as required by Rule 32.1(e). His petition is therefore precluded by Rule 32.2(a)(3) and (5).
The following analysis by the Court of Criminal Appeals is the correct one and the one this Court should apply in this case:
"Even if this claim were properly before us, we would decide it adversely to [Pierce]. First, the facts do not support [Pierce's] claim that Whittle had an improper close and continual association with the jurors. Second, the record does not show that Sheriff Whittle was a key State witness. Third, [Pierce] has not shown any evidence that he was actually prejudiced by any contacts between Whittle and the jury.
"First, [Pierce] has not shown that Sheriff Whittle had close and continual contact with the jurors. At the evidentiary hearing on [Pierce's] Rule 32 petition, three jurorsGerald Butler, Robert Owens, and Keith Browntestified regarding Sheriff Whittle's contact with the jury during the trial. Dot Kirkland, who served as a matron for the jurors during the trial, also testified regarding Sheriff Whittle's contacts with the jurors during the trial.
"Gerald Butler testified that he thought Whittle was in the courtroom with other law enforcement personnel at one time during the trial, but he was not sure. He did not remember Sheriff Whittle driving the jurors or eating with the jurors any time during the trial. He did testify that, on some mornings during the trial, Whittle went to the motel where the jurors were staying to make sure everything ran smoothly.
"Butler also testified that, on the morning just before the sentencing hearing began, Whittle told him there would be extra security in the courtroom because a member of [Pierce's] family had threatened the jury. However, Butler stated that he and Whittle did not discuss the facts of the case during that conversation. He also added that he did not discuss the facts of the case at any time with Whittle or any of the bailiffs or deputies. Finally, he testified that the extra security in the courtroom did not disturb him.
"Robert Owens testified that Whittle did not drive the jurors while they were sequestered. Although he stated that Sheriff Whittle was sometimes `with' the jurors at lunch, Owens also testified that only some of the deputies and Dot Kirkland `ate with' the jurors. He testified that he had known Whittle all of his life, but stated that that did not have any effect on his decisions as to [Pierce's] guilt or during sentencing. He further testified that he followed the trial court's instructions and made his decisions based only on the testimony, exhibits, and evidence presented at trial.
"Keith Brown testified that he did not specifically remember who drove the jurors back and forth between Geneva and Enterprise, although he indicated that he thought Whittle and some of his deputies did. He stated that he did not remember being in the car Whittle was driving. He also testified that Whittle and some of his deputies went with the jurors to eat lunch. However, he stated that Whittle did not discuss the facts of the case during lunch. Brown testified that he overheard something in the hallway of the courthouse about [Pierce's] family making threatening comments. *627 Although he was not sure, he testified that he thought the people he heard talking were deputies. However, he testified that the fact that he heard about the threats did not affect his deliberations.
"Dot Kirkland testified that she, Whittle, and the chief deputy drove the vehicles that transported the jurors during the trial and that they accompanied the jurors to lunch. She added that neither she, Whittle, nor the chief deputy talked to the jurors about the facts of the case.
"Thus, the evidence concerning Sheriff Whittle's contact with the jury was conflicting. [Pierce] alleges that Whittle talked with the jurors about the case and that Keith Brown heard Whittle and his deputies discussing the threats [Pierce's] family made against the jury. All of the testimony at the evidentiary hearing established that Whittle did not discuss the facts of the case with the jurors. The only mention of a conversation between Sheriff Whittle and a juror was that, on the morning before the sentencing hearing, Whittle communicated to Juror Butler the fact that security was being increased because [Pierce's] family had threatened the jurors. However, this occurred after [Pierce] had been found guilty, and Butler testified that it did not affect his sentencing recommendation. Juror Brown testified that he thought he overheard deputies, not Whittle, discussing the threat, but stated that it did not have any effect on his deliberations.
"[Pierce] also cites Dot Kirkland's testimony that Whittle ate lunch with the jurors every day and transported the jurors to and from Enterprise every day during the trial, and states that these assertions are supported by other testimony. However, there was also testimony that Whittle did not drive or eat with the jurors during the trial. Again, the testimony was conflicting. In such an instance, the circuit court's decision regarding the credibility of the witnesses should be given great deference. Here, the circuit court, in addressing the merits of [Pierce's] claim, made the following findings of facts after the evidentiary hearing:
"`The next claim is that jurors had ex parte contact with Sheriff Whittle during the trial. There was testimony presented at the Rule 32 hearing that Sheriff Whittle, on occasion, helped transport the jurors to lunch and to and from their hotel. There was no evidence presented that the Sheriff ate with the jurors or that any discussion occurred between the jurors and the Sheriff concerning the facts of the case. In fact, three jurors testified at the Rule 32 hearing that there was no discussion between Sheriff Whittle and these jurors about the facts of this case. Further, the jurors testified that the fact that Sheriff Whittle helped transport them on occasion did not affect their deliberations in this case. Thus, this claim is without merit.'
"(C.R. 345.)
"The circuit court properly found that [Pierce] did not show that Whittle had improper close and continual contact with the jury throughout the trial. Because there was conflicting testimony about Whittle's contact with the jury, it was the circuit court's responsibility to make credibility choices and to resolve the conflicts in the testimony. The record of the evidentiary hearing supports the circuit court's findings, see Nathan v. State, 689 So.2d 934 (Ala.Cr.App. 1996), and we will not overturn them. Based on the circuit court's findings and the evidence presented at the evidentiary hearing, we hold that [Pierce] did not *628 present evidence sufficient to support a finding that Whittle had a `close and continual association with the jurors.' Turner [v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)]. Rather, `the attentions are such as might have been expected from the officer in charge of the jury, whoever he might be, when authorized or approved by the trial judge.' Harris v. State, 233 Ala. 196, 198, 172 So. 347, 348 (Ala.1936). In King v. State, 266 Ala. 232, 238, 95 So.2d 816, 821 (Ala.1957), this court held:
"`The proof shows no undue familiarity between the officers and the juror. In instances of this kind each case stands on its own facts. Bell v. State, 227 Ala. 254, 149 So. 687 [(1933)]. The fact that the officer in charge of the jury testifies to important facts, does not always disqualify him from having charge of the jury. Harris v. State, 233 Ala. 196, 172 So. 347.'
"Because [Pierce] has not shown that Sheriff Whittle had improper close and continual contact with the jurors during the trial, his argument must fail.
"Second, [Pierce] did not prove that Sheriff Whittle was a key witness in this case. When he was taken into custody in Coffee County, [Pierce] made a statement about the crime to Coffee County Deputy Jack Hubbard. When Sheriff Whittle and Geneva County Deputy Greg Ward took [Pierce] into custody from Coffee County officials and transported him to Geneva County, [Pierce] made another statement regarding the crime. At trial, Hubbard and Ward testified about the substance of the statements [Pierce] made. [Pierce's] brother also testified about what [Pierce] had told him about the crime. In addition, [Pierce's] friends testified about his suspicious actions after the murder, including his having possession of the victim's automobile, his inconsistent statements about why he was driving the vehicle, and his offer to sell the vehicle to one of his friends for $5. Sheriff Whittle was the last witness to testify for the State, and his testimony was largely repetitive of the evidence already introduced through other witnesses. Although he gave more details in his testimony, the other officers and [Pierce's] brother had already testified about the substance of each of [Pierce's] statements. Therefore, much of Whittle's testimony had already been presented to the jury.
"In addition, [Pierce's] testimony at trial was consistent with his previous statements to police. In the statement he made to Whittle, [Pierce] admitted taking the victim's vehicle but denied killing her. In fact, he stated that a man named Jim told him, at gunpoint, to take the vehicle and leave. He contended that Jim killed the victim. This was consistent with the story he had previously told his brother, Hubbard, and Ward and with his later trial testimony. Furthermore, there was other evidence connecting [Pierce] to the crime, including the testimony of John Juhnke, Nathan Pierce, and his friends who observed his actions after the crime. Finally, other witnesses testified about the appearance of the crime scene, the discovery of the victim's vehicle, and what [Pierce] was doing and what clothes he was wearing when he was arrested. Thus, contrary to [Pierce's] assertions, Whittle was not the State's main witness against [Pierce], and his testimony was not necessary to convict [Pierce].
"[Pierce] argues that Sheriff Whittle's comments about his demeanor and conduct during questioning were damaging to his defense. On direct examination by the State, Whittle testified that [Pierce] was quiet, not belligerent, during *629 questioning. During cross-examination, defense counsel elicited Whittle's testimony that [Pierce's] conduct was not consistent with the way most other suspects acted during questioning. Defense counsel also elicited Whittle's testimony that, during questioning about the murder, [Pierce] became emotional, started crying, and stated that he did not commit the murder. Finally, counsel elicited Whittle's testimony that [Pierce] talked to the officers every time they asked him to and that he had been a model prisoner while in jail. Thus, defense counsel attempted to use Whittle's testimony to [Pierce's] advantage to show that [Pierce] did not act like other criminals, that he did show emotion about the crime, that he cooperated with law enforcement in the investigation of the crime, and that he was a model prisoner. Accordingly, [Pierce's] arguments about Whittle's comments are not well taken.
"Much of Sheriff Whittle's testimony was merely cumulative to the testimony of the other witnesses. Furthermore, it was consistent with [Pierce's] trial testimony. Finally, based on the evidence presented by the other State witnesses, Whittle's testimony was not necessary to obtain a conviction. Therefore, [Pierce] did not prove that Sheriff Whittle was a key witness for the State."
851 So.2d at 567-70.
Pierce then claims that his counsel was ineffective for not raising the issue of Sheriff Whittle's improper contact with the jury. However, because I do not find Sheriff Whittle to have been a "key witness" or to have had "close and continual contact" with the jury, I believe this claim lacks merit.
Rule 32.1(e) contains certain specific requirements for a successful Rule 32 petition requesting relief on the basis of a nonjurisdictional problem, such as newly discovered evidence. Pierce does not meet any of the three required grounds for relief based on newly discovered evidence. First, he knew or should have known about Sheriff Whittle's contact with the jury. Secondly, he did not show that had he known of the contact the result of his trial would have been different. And thirdly, he did not show that he was innocent of the crime charged or that he should not have received the sentence he received. This Court's September 1, 2000, opinion allowed for an exception from those requirements if the claim raised was a constitutional claim. I agree with the Court of Criminal Appeals that even if he had been able to comply with the requirements of Rule 32, Ala.R.Crim.P., Pierce has not shown that Sheriff Whittle was a "key witness" or that he had "close and continual association" with the jury, thus precluding his claim of ineffective assistance of counsel. His petition was procedurally insufficient, and the substance of his claims was meritless for more than one reason.
For the above reasons, I must respectfully dissent.
SEE, Justice (dissenting).
I dissent from the Court's holding that Pierce was prejudiced by the ineffective assistance of his counsel. In my special writing in Ex parte Pierce, 851 So.2d 606 (Ala.2000), I disagreed "with the [Court's] conclusion that `Sheriff Whittle was a key witness who had improper close and continual contact with the jury.'" 851 So.2d at 617. If the sheriff's contact with the jury was not prejudicial, then the failure of Pierce's counsel at trial, posttrial, or by direct appeal to object to that contact did not constitute ineffective assistance of counsel.
NOTES
[1] Rule 32.1 provides, in part:

"Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
"(a) The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief."
[2] Rule 32.2 provides, in pertinent part:

"(a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:
"....
"(3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or
"....
"(5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b)."
[*] Justice Brown was a member of the Court of Criminal Appeals when that Court considered this case.
[3] This standard is consistent with this Court's other holdings applying the "might-have-been-prejudiced" standard for addressing juror-misconduct claims. See Ex parte Dobyne, 805 So.2d 763 (Ala.2001); Dawson v. State, 710 So.2d 472 (Ala.1997).
[4] The sheriff has statutory responsibility for making provisions for a sequestered jury. § 12-16-10, Ala.Code 1975. However, when a sheriff, deputy, or court official is a witness in the trial, it is improper for that sheriff, deputy, or court official to have direct contact with the jurors.